**RECORD NO. 15-4350**

In The

# United States Court of Appeals

### For The Fourth Circuit

# UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

# JOSEPH A. GARRETT,

*Defendant – Appellant*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT CLARKSBURG

———————————

## BRIEF OF APPELLANT

———————————

**Scott C. Brown**
**SCOTT C. BROWN LAW OFFICE**
**1600 National Road**
**Wheeling, West Virginia  26003**
**(304) 242-6001**

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION ....................................................................1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ............................2

    A.    Preface ....................................................................................2

    B.    Issue .......................................................................................2

STATEMENT OF THE CASE .............................................................................3

SUMMARY OF THE ARGUMENTS ................................................................19

ARGUMENTS .....................................................................................................20

    I.    THE DISTRICT COURT DID NOT ERR BY REJECTING MR. GARRETT'S CLAIM THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT HIS CONVICTION ON THE INFORMATION ......................................20

        A.    STANDARD OF REVIEW ........................................20

        B.    DISCUSSION OF THE ISSUE .................................20

    II.    THE DISTRICT COURT DID NOT ERR WHEN IT SENTENCED APPELLANT JOSEPH A. GARRETT TO THE HIGHER END OF THE ADVISORY GUIDELINE RANGE AS ANY SENTENCE IMPOSED WITHIN A GUIDELINE RANGE IS PRESUMPTIVELY REASONABLE ............................22

        A.    STANDARD OF REVIEW ........................................22

        B.    DISCUSSION OF THE ISSUE .................................22

CONCLUSION ..................................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Anders v. California,
    386 U.S. 738 (1967)...................................................................2, 23

Gall v. United States,
    552 U.S. 38 (2007).........................................................................22

Rita v. United States,
    551 U.S. 338, 127 S. Ct. 2456 (2007) ...........................................22

United States v. Abu Ali,
    528 F.3d 210 (4th Cir. 2008) .........................................................22

United States v. Burgos,
    94 F.3d 849 (4th Cir. 1996) ...........................................................20

United States v. Louthian,
    756 F.3d 295 (4th Cir. 2014) .........................................................22

United States v. MacCloskey,
    682 F.2d 468 (4th Cir. 1982) .........................................................20

**STATUTES**

18 U.S.C., Crimes and Criminal Procedure......................................4, 5, 6

18 U.S.C. § 922(g)(1)...............................................................................3

18 U.S.C. § 924(a)(2)...............................................................................3

18 U.S.C. § 2250(a) .................................................................................3

18 U.S.C. § 3231......................................................................................1

26 U.S.C., Internal Revenue Code........................................................4, 6

26 U.S.C. § 5841 ....................................................................................3

26 U.S.C. § 5861(d) .............................................................................3

26 U.S.C. § 5871 ..................................................................................3

28 U.S.C. § 1291 ..................................................................................1

**RULES**

Fed. R. App. P. 4(b) ...........................................................................1

Fed. R. Crim. P. 29.......................................................................passim

Fed. R. Evid. 403 ......................................................................... 13-14

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The appellant in this case, Joseph A. Garrett, was criminally indicted for violating federal laws.  The district court, therefore, had subject matter jurisdiction pursuant to 18 U.S.C. § 3231 which provides in part that "the district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

Appellate jurisdiction is conferred by 28 U.S.C. § 1291 which provides in part that "the courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States" and by Rule 4(b) of the Federal Rules of Appellate Procedure.  Mr. Garrett entered a plea of guilty to a one count Superseding Indictment (Case No. 1:14-CR-48) charging him with "Failure to Update Sex Offender Registration."  Mr. Garrett was found guilty on a two count Indictment (Case No. 1:14-CR-57) after a three (3) day trial ending on February 6, 2015.  On June 1, 2015 Mr. Garrett was sentenced in both cases and the district court entered a Judgment in a Criminal Case on June 3, 2015.  (Document #59 Case No. 1:14-CR-48; Document #90 Case No. 1:14-CR-57).  On June 11, 2015 Mr. Garrett timely filed a <u>Notice of Appeal</u> in both Case No. 1:14-CR-48 and No. 1:14-CR-57.  (Document #61 Case No. 1:14-CR-48; Document #92 Case No. 1:14-CR-57).

# STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

**A.    Preface.**

After carefully examining the record and researching the relevant law for any violation of the United States Constitution, applicable federal statutes, the Federal Rules of Criminal Procedure, and the United States Sentencing Commission Guidelines, counsel has identified and briefed all arguable issues and concluded that the appeal presents no legally nonfrivolous questions.   Thus, counsel submits this brief in accordance with <u>Anders v. California</u>, 386 U.S. 738 (1967).

**B.    Issue.**

1.    Did the district court err when it denied appellant Joseph A. Garrett's Rule 29 motion for a judgment of acquittal at the close of the governments' case and again at the close of his case?

2.    Did the district court err when it sentenced appellant Joseph A. Garrett within the advisory guideline range but at the higher end of the advisory guideline range?

## STATEMENT OF THE CASE

On or about June 16, 2014 a Criminal Complaint was filed against the appellant Joseph A. Garrett in the United States District Court for the Northern District of West Virginia charging him, pursuant to 18 U.S.C. § 2250(a) with "Failure to Register" as a sex offender.  (Document #1, Case No. 1:14-CR-48).[1] Subsequently, on June 17, 2014 Mr. Garrett was indicted by a Federal Grand Jury in a one count Indictment for "Failure to Update Sex Offender Registration" in violation of 18 U.S.C. § 2250(a).  (Document #2, Case No. 1:14-CR-48).

On July 8, 2014 a Federal Grand Jury returned a one count Superseding Indictment against Mr. Garrett charging him with the same offense but changing the time frame in the body of the Indictment.   (Document #18, Case No. 1:14-CR-48).

On July 22, 2014 a federal Grand Jury returned a two count Indictment against Mr. Garrett charging him in Count One as being a "Felon in Possession of Firearm" in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and in Count Two as being in "Possession of a NFA Firearm Not Registered to a Person in the National

---

[1]   Albeit somewhat confusing, Mr. Garrett was indicted in two (2) separate cases, namely Case No. 1:14-CR-48 and Case No. 1:14-CR-57.  Mr. Garrett eventually plead guilty in Case No. 1:14-CR-48 but went to trial in Case No. 1:14-CR-57. The cases were consolidated for purposes of this appeal.

Firearms Registration and Transfer Record" in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. (Document #1, Case No. 1:14-CR-57).

On January 20, 2015 Mr. Garrett appeared before The Honorable Irene M. Keeley to enter a guilty plea to the one count Superseding Indictment in Case No. 1:14-CR-48. Sentencing in that case was set for June 1, 2015.

The trial in Case No. 1:14-CR-57 commenced on February 4, 2015 and lasted three (3) days. The government's case in chief was comprised of the testimony of nine (9) witnesses. Of these nine (9) witnesses, two were agents with the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives and the other seven (7) were supposed witnesses to the events giving rise to the charges in the Indictment.

The first witness to testify on behalf of the government was Kenneth Grace, a Senior Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives. (Trial Transcript, pages 57-81). Special Agent Grace testified that he was contacted by the Harrison County Sheriff's Department regarding a shotgun which was retrieved from the May 13, 2014 scene involving the appellant Joseph A. Garrett. (Trial Transcript, page 58). Special Agent Grace was qualified as an expert both as to whether a firearm falls into the definition of Title 18 as well as to determine whether a firearm falls under the control of Title 26 of the United States Code. (Trial Transcript, pages 60-63). Grace testified that he measured the

shotgun recovered from the scene and that the overall barrel length of the shotgun was shorter than that allowed on a shotgun without being registered. (Trial Transcript, pages 64-65). Based upon his overall study and evaluation of the shotgun he concluded that it did fall "under the purview of the National Firearms Act" due to the length of the barrel and that such shotgun was required by law to be registered in the National Firearms Registration and Transfer Record. (Trial Transcript, page 68). Special Agent Grace also testified that he identified potential witnesses to the events surrounding the May 13, 2014 incident and reviewed pictures of the scene taken by local law enforcement officers. (Trial Transcript, pages 70-75). Grace finally testified on direct that the shotgun in question met the statutory definition of a firearm under Title 18 of the United States Code. (Trial Transcript, page 75).

During cross examination Special Agent Grace stated that local law enforcement did not find any spent shotgun shells and that no shotgun shells were found at the scene, in the truck driven by Mr. Garrett that night, or in Mr. Garrett's residence. (Trial Transcript, pages 77-79).

The government next called Michael Charles Powell. (Trial Transcript, pages 84-104). Mr. Powell testified that he was a Firearms Enforcement Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives. (Trial Transcript, pages 84-85). Mr. Powell was qualified by the district court as an expert in the

areas of firearm examination and classification. (Trial Transcript, page 87). Mr. Powell testified that he examined the shotgun recovered from the May 13, 2014 incident and that such shotgun met the statutory definition of a firearm under Title 18 of the United States Code. (Trial Transcript, pages 87-89). He also testified that the shotgun was manufactured outside the State of West Virginia, namely in Puerto Rico, that it was manufactured in the early 1970's and that it was not an antique firearm. (Trial Transcript, pages 89-90).

Mr. Powell next testified that based upon his examination of the shotgun that it met the statutory definition of a firearm under the National Firearms Act found in Title 26 of the United States Code. (Trial Transcript, page 90). He also testified that the recovered shotgun, due to its modification on the stock and barrel length, would need to be registered in order to be "lawfully" possessed and that a person with a felony record would not be able to register any firearm with the National Firearms Registration and Transfer Record. (Trial Transcript, page 98).

On cross examination Mr. Powell testified that the shotgun, since it was modified and shortened, and did not have a stock, would be difficult to fire and that when test firing the shotgun he used two hands. (Trial Transcript, pages 101-102). On redirect he testified that it would have been possible for the shotgun to be fired with one hand. (Trial Transcript, page 103).

The government continued its case by calling Jeremy Skinner. (Trial Transcript, pages 103-119). Mr. Skinner testified that he was a neighbor of Mr. Garrett, that he sees Mr. Garrett and his other neighbors daily and that he was outside during the events of May 13, 2014 and saw "quite a few people out at the Martin residence and they were screaming, cursing at each other and fighting." (Trial Transcript, pages 104-109). He also testified that Mr. Garrett lived with the Martins. Mr. Skinner testified that he heard all the arguing and saw Kevin Hedrick and his girlfriend Amanda in the pool which was in the Martin's backyard. He then saw Mr. Hedrick and Amanda get out of the pool, the argument ensued and "at some point Joe [Garrett] ended up with a gun and shot it, what appeared to be into the ground." (Trial Transcript, page 110). Mr. Skinner testified that he saw Mr. Garrett with a gun, saw him shoot the gun and that the gun recovered from the pool and shown to Mr. Skinner in the courtroom looked like the shotgun recovered from the pool. (Trial Transcript, page 111). Finally, he testified that the gun was thrown into the swimming pool by Kevin Hedrick's girlfriend Amanda but that besides her he did not see anyone else with a gun. (Trial Transcript, page 112).

On cross examination Mr. Skinner was questioned about where he was when he witnessed the event going on over at the Martin residence and his ability to clearly see such event due to various obstacles. (Trial Transcript, pages 113-119).

Amanda Bell was the next witness called by the government. (Trial Transcript, pages 122-157). Ms. Bell testified that in May of 2014 she dated Kevin Hedrick and that she lived with him next to the Martins' residence in Haywood, West Virginia. She also testified that Joseph Garrett lived with the Martins at that time. (Trial Transcript, pages 123-125). Ms. Bell testified that she had known Joseph Garrett for 2-3 months and that she and her then boyfriend Kevin Hedrick were swimming in the pool on the Martin property. (Trial Transcript, pages 127-128). She testified that when she and Mr. Hedrick got into the pool that neither of them had a gun and that Mr. Garrett was not at home. While in the pool Mr. Garrett and his girlfriend Joy Martin drive up in his truck. An argument broke out between Mr. Garrett and Kenny Martin and then Mr. Garrett began arguing with Mr. Hedrick about his being in the pool with Ms. Bell. The argument continued between Mr. Garrett and Kenny Martin and both she and Kevin Hedrick got out of the pool. Shortly after getting out of the pool she saw Mr. Garrett with the shotgun and saw him shoot it. (Trial Transcript, pages 129-131). Ms. Bell testified that Mr. Garrett was trying to reload the shotgun after he fired it and that Kevin Hedrick tackled Mr. Garrett onto the ground. (Trial Transcript, pages 131-132). Once Mr. Garrett was tackled, Kevin Hedrick was able to get the shotgun from him and tossed it to the side. Ms. Bell then picked up the shotgun and threw it into the swimming pool. (Trial Transcript, page 133).

8

Ms. Bell then testified that she was "pretty sure" that the shotgun presented to her in the courtroom was the same gun she threw into the pool. (Trial Transcript, page 136). Ms. Bell testified that Mr. Garrett was probably "right in front of [his] truck" when he shot the shotgun. (Trial Transcript, page 138). After Ms. Bell's testimony, the first day of trial concluded.

The second day of trial commenced on February 5, 2015. The government continued its case that day by calling Rick Hedrick as a witness. (Trial Transcript, pages 165-200). Mr. Hedrick testified that in May 2014 he lived in Haywood, West Virginia with his son Kevin Hedrick and his son's girlfriend Amanda Bell. His neighbors at that time included the Martins and Joseph Garrett who was living with Joy Martin. (Trial Transcript, pages 167-168). Mr. Hedrick testified as to the events that transpired on May 13, 2014 beginning with "a lot of fussing" that was going on that day. (Id.). He was sitting in his yard and his son Kevin and Amanda Bell were in the swimming pool at the Martins' house. Mr. Garrett came home and began complaining of Kevin and Amanda being in the pool. Mr. Garrett and Kenny Martin then begin arguing. (Trial Transcript, pages 170-171). Rick Hedrick then testified that he had words with Mr. Garrett who then proceeded to pull out a gun and shoot it. (Trial Transcript, pages 172-173). He testified that Mr. Garrett was holding the gun when it went off. (Trial Transcript, page 174). After the gun was discharged his son Kevin was able to get the gun away from Mr.

9

Garrett.  Rick Hedrick then told Amanda Bell to get the gun and throw it into the swimming pool.  (Trial Transcript, pages 174-175).  Mr. Hedrick then identified the shotgun in the courtroom as looking like the same gun that Mr. Garrett had on May 13, 2014.  (Trial Transcript, page 180).

On cross examination, Rick Hedrick testified that despite his testimony that Mr. Garrett had fired the gun, no one was shot, the house wasn't shot, the pool, or anything else.  (Trial Transcript, pages 194-196).  On redirect he testified that Joseph Garrett had a gun that day.  (Trial Transcript, page 200).

Kevin Hedrick was the next witness to testify for the government. (Trial Transcript, pages 201-223).  In May 2014 he was living with his father Rick Hedrick in Haywood, West Virginia and that they were neighbors with the Martins and Joseph Garrett.  (Trial Transcript, pages 202-203).  On May 13, 2014 he and his girlfriend Amanda Bell went swimming in the pool at the Martins.  He testified that Joseph Garrett then arrived home in his truck and started cussing.  (Trial Transcript, pages 204-205).  Mr. Garrett and Kenny Martin then began arguing and cussing over a beer.  After continued arguing, Mr. Garrett unzipped a bag, pulls out a sawed off shotgun and loads it.  Kevin Hedrick then testified that when Mr. Garrett was closing the breach of the shotgun it went off.  Mr. Garrett then popped the shotgun open and was trying to reload it when Kevin grabbed the shotgun from him and threw it behind him.  (Trial Transcript, pages 209-210).  Amanda Bell

10

then picked the shotgun up and threw it into the swimming pool.  Mr. Hedrick also identified the shotgun in the courtroom (Government's Exhibit #1) as being the same gun that Mr. Garrett had on May 13, 2014.  (Trial Transcript, pages 216-217).

On cross examination Kevin Hedrick testified that as soon as Mr. Garrett put a shell in the gun and "latched" it it went off.  (Trial Transcript, page 223).  Again, despite the shotgun being supposedly pointed towards his father and Kenny Martin, no one was shot, nor did the house get shot up.  (Trial Transcript, pages 224-225).

The next witness called on behalf of the government was Kenneth Martin. (Trial Transcript, pages 237-260).  Mr. Martin testified that he lives in Haywood, West Virginia with his mother Billy and his sister Joy.  He also testified that Joseph Garrett lived with them too.  (Trial Transcript, pages 238-239).  Mr. Martin testified that his memory is bad as he gets drunk every day by drinking half a gallon of Lord Calvert's whiskey.  (Trial Transcript, page 240).  Mr. Martin identified that shotgun (Government's Exhibit #1) as the same gun Mr. Garrett had by Mr. Garrett's truck when he "pulled it up" on May 13, 2014.  (Trial Transcript, page 246).  He also testified that no one else had a gun on May 13, 2014.  (Trial Transcript, page 249).

11

Kory Garrett was the government's next witness. (Trial Transcript, pages 260-272). Kory Garrett testified that he is the son of Heather Skinner and the stepson of Jeremy Skinner and that he is not related to Joseph Garrett in any fashion. (Trial Transcript, page 261). Kory Garrett testified that he was in the driveway outside at his mother's house in Haywood, West Virginia on May 13, 2014when he heard people arguing at the Martin/Hedrick residences and that he heard a gunshot. (Trial Transcript, pages 263-264). He testified that he saw Joseph Garrett shoot the gun. (Trial Transcript, page 264). Importantly, Kory Garrett could not identify Government Exhibit #1 as being the gun recovered from the scene as he "didn't actually see the firearm." (Trial Transcript, page 266).

On cross examination Kory Garrett was questioned about where he was when he witnessed the event going on over at the Martin residence and his ability to clearly see such event due to various obstacles. (Trial Transcript, pages 272-276).

The government's final witness was Heather Skinner. (Trial Transcript, pages 279-300). Ms. Skinner testified that she lives in Haywood, West Virginia and that the Hedricks and Martins live nearby. (Trial Transcript, page 281). She testified that on May 13, 2014 she heard her neighbors fighting and she, along with her husband Jeremy Skinner and son Kory Garrett, stopped to watch what was going on. She saw a male and female in the swimming pool and she saw them get

out.  Joseph Garrett seemed to walk behind the house, disappearing for a moment, and when he came back into view she saw him with a firearm.  (Trial Transcript, page 284).  Although she thought she saw Mr. Garrett with a sawed off shotgun she could not identify with certainty that Government's Exhibit #1 was the same firearm.  Ms. Skinner then testified that it looked as though Mr. Garrett "propped" up the firearm and shot it.  (Trial Transcript, pages 284-285).  Kevin Hedrick was then able to get the gun from Mr. Garrett and the "female that was in the pool threw the gun into the pool."  (Trial Transcript, page 285).  Ms. Skinner also testified that only Joseph Garrett had a gun on that day.  (Trial Transcript, pages 292-293).

As before, on cross examination, Ms. Skinner was questioned about her ability to see the events that allegedly took place at the Martin/Hedrick residences due to obstacles in the line of sight.  (Trial Transcript, pages 294-298).

At the conclusion of Ms. Skinner's testimony Mr. Garrett, through counsel, made a vague oral motion for a Rule 29 judgment of acquittal.  (Trial Transcript, page 303).  The district court recognized that Mr. Garrett's counsel was effectively conceding the Rule 29 motion.  (Trial Transcript, page 304).  The parties then went on to argue the government's intention to call Deputy United States Marshal Hare as a witness.  Mr. Garrett, through counsel, objected to Deputy Hare's proffered testimony in that such testimony would relate to Mr. Garrett's arrest in

13

Pennsylvania and that such arrest was not relevant in this trial. The government argued that his arrest in Pennsylvania was probative of Mr. Garrett's consciousness of guilt. Using the balancing test set forth in Rule 403 of the Federal Rules of Criminal Procedure the district court ruled that Deputy Marshal Hare's proposed testimony would be prejudicial and ruled that he would not be allowed to testify in the government's case in chief. With that ruling the government rested its case. (Trial Transcript, pages 304-307).

Additionally, the district court denied Mr. Garrett's oral motion for a judgment of acquittal. (Trial Transcript, page 308).

Mr. Garrett then began his case by calling Dottie Goodwin to the stand. (Trial Transcript, pages 312-323). Ms. Goodwin testified that she lived in Haywood, West Virginia and that she is neighbors to Billy and Joy Martin and Joseph Garrett among others. (Trial Transcript, page 313). She testified that in the late spring or summer of 2014 she was on her front porch cleaning it when she heard "hollering and carrying on" at her neighbors and saw people in the swimming pool "cussing and carrying on." (Trial Transcript, pages 316-317). She testified that Joseph Garrett was working on his four-wheeler and Kevin Hedrick picked up a two by four and "started pounding Joe in the back with it." (Id.). She testified she saw people throwing tools at each other and then saw Joseph Garrett get into his truck and drive off. (Trial Transcript, page 318). She testified that she

14

did not see Joseph Garrett with a gun nor did she see him fire a gun. (Trial Transcript, pages 320-321).

On cross examination by the government, Ms. Goodwin testified that she was friends with Joy Martin. She testified that she saw everyone over in the Martin/Hedrick properties but that she did not see any firearm at all. (Trial Transcript, pages 324-326).

The final witness called for the defense was the appellant Joseph Garrett. (Trial Transcript, pages 340-357). Mr. Garrett first testified that he lives in Haywood West Virginia with his girlfriend Joy Martin and her mother Billy Martin. (Trial Transcript, page 342). Mr. Garrett testified to the events that occurred on May 13, 2014. He was out driving with Joy Martin and got home around 2:30 or 3:00 p.m. that day and saw Kevin Hedrick and Amanda Bell in the swimming pool. Mr. Garrett got out of the truck and began complaining to Kevin Hedrick that Kevin should start paying for the chemicals for the pool and that the pool belonged to him and Joy Martin. (Trial Transcript, pages 345-346). He testified that he Kenny Martin and Kevin Hedrick started harassing him and an argument ensued between them. Mr. Garrett said he told Kenny Martin and Kevin Hedrick that he was "going to call the law." He took his cell phone out of his pocket and the "next thing I know I'm laying over my bike getting beat in the back of the head." (Trial Transcript, pages 349-350). After getting hit four to five times

he laid on the ground "about fifteen, twenty minutes" and then began throwing tools from a nearby toolbox at Kevin Hedrick. (Trial Transcript, pages 350-351).

Mr. Garrett was then shown the shotgun, Government's Exhibit #1, and vehemently denied having it, using it or seeing it on May 13, 2014. (Trial Transcript, page 365).

During cross examination, Mr. Garrett was asked questions concerning Government's Exhibit #1 and testified that prior to that day in court he had never seen it before. (Trial Transcript, page 358). Mr. Garrett testified that he was not the aggressor but that he drove off and left the area, without his belongings, as he no longer wanted to be around Kenny Martin or Kevin Hedrick and that he had done the same thing before. (Trial Transcript, pages 360-361).

With the end of Mr. Garrett's testimony the defense rested and the presentation of evidence was concluded. Mr. Garrett, through counsel, reiterated his Rule 29 motion which was again denied by the trial court. (Trial Transcript, page 368). The jury was discharged for the evening and a charge conference was conducted by the district court (Trial Transcript, pages 373-380). On February 6, 2015, the third day of the trial, the district court instructed the jury and the attorneys presented their closing arguments. (Trial Transcript, pages 383-446).

At the conclusion of the closing arguments the jury retired to deliberate. After such deliberation, the jury returned a verdict of Guilty as to each count of the

Indictment (Trial Transcript, page 451) and the jurors were polled on their verdict. (Trial Transcript, pages 452-453). The verdict was likewise detailed on a <u>Verdict</u> form. (Document #78). The district court then dismissed the jury and adjudged appellant Joseph A. Garrett guilty on Counts One and Two of the Indictment. (Trial Transcript, page 454).

On February 6, 2015 the district court entered a Judgment Order. (Document #80). On May 4, 2015 appellant Joseph Garrett filed a *pro se* motion for a mistrial and on May 5, 2015 the district court entered an <u>Order Denying Pro Se Motion for Mistrial</u>. (Document #84).

A sentencing hearing was held on June 1, 2015. At the conclusion of the sentencing hearing Mr. Garrett was sentenced to 120 months in prison on both Count One and Two in Case No. 1:14-CR-57, such sentences to run concurrently. Mr. Garrett was also placed on supervised release for a period of 3 years for both Count One and Count Two in Case No. 1:14-CR-57, again to run concurrently. Mr. Garrett was also ordered to pay the special mandatory assessment of $100.00 on each count of conviction for a total of $200.00.

Additionally, during that same sentencing hearing, the district court sentenced Mr. Garrett to 27 months in prison in Case No. 1:14-CR-48, such term to be served consecutively to the 120 months in Case No. 1:14-CR-57, for a total effective sentence of 147 months. Mr. Garrett was likewise sentenced to a term of

17

supervised release in Case No. 1:14-CR-48 of 6 years, to be served concurrently with the 3 years of supervised release in Case No. 1:14-CR-57. A special assessment of $100.00 was also ordered to be paid.

The Judgment in a Criminal Case entered on June 3, 2015 reiterated Mr. Garrett's sentence. (Document #59 Case No. 1:14-CR-48; Document #90 Case No. 1:14-CR-57).

On June 11, 2015 Mr. Garrett, through counsel, filed a timely <u>Notice of Appeal</u>. (Document #61 Case No. 1:14-CR-48; Document #92 Case No. 1:14-CR-57).

Mr. Garrett is currently incarcerated at FCI Hazelton in Bruceton Mills, West Virginia serving the sentence imposed by the district court.

## SUMMARY OF THE ARGUMENTS

1.      The district court did not commit error is denying appellant Joseph A. Garrett's Rule 29 motion for a judgment of acquittal as there was sufficient evidence, when taken in the light most favorable to the prosecution, which could warrant a jury finding that the Mr. Garrett was guilty beyond a reasonable doubt.

2.      The district court did not err when it sentenced appellant Joseph A. Garrett to the higher end of the advisory guideline range as any sentence imposed within a guideline range is presumptively reasonable.

Therefore, there are no nonfrivolous issues to raise in this appeal.

## ARGUMENTS

## I. THE DISTRICT COURT DID NOT ERR BY REJECTING MR. GARRETT'S CLAIM THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT HIS CONVICTION ON THE INFORMATION.

### A. STANDARD OF REVIEW

The standard of review for deciding a Rule 29 motion is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982); United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996).

### B. DISCUSSION OF THE ISSUE

During its charge to the jury, the district court instructed the jury as follows:

In order to establish the offense charged in Counts One of the Indictment, the United States must prove each of the following elements beyond a reasonable doubt:

1.     The defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year;

2.     The defendant thereafter knowingly possesses a firearm; and

3.     The possession was in or affecting interstate commerce, because the firearm had traveled in interstate commerce at some point during its existence.

Further, the record is clear, and the jury was so instructed, that the government and Mr. Garrett had stipulated that Mr. Garrett was a felon, having

20

previously been convicted of a crime punishable by a term of imprisonment exceeding one year, and that the firearm had traveled in interstate commerce. (Trial Transcript, pages 396-397).

As to Count Two of the Indictment, the district court instructed the jury as follows:

> In order to establish the offense charged in Counts Two of the Indictment, the United States must prove each of the following elements beyond a reasonable doubt:
>
> 1.    The defendant knowingly possessed a firearm;
>
> 2.    The defendant knew that the firearm was a weapon made from a shotgun and had an overall length of less than 26 inches or a barrel of less than 18 inches in length;
>
> 3.    The forearm was in operating condition; and
>
> 4.    The firearm was not registered to the defendant in the National Firearms Registration and Transfer Record. It does not matter whether the defendant knew that the firearm was not registered or had to be registered.

As before, the jury was instructed that the government and Mr. Garrett had stipulated that Mr. Garrett was not the owner of any firearm registered in the National Firearms Registration and Transfer Record and that the firearm at issue is not registered to the defendant in the National Firearms Registration and Transfer Record. (Trial Transcript, pages 398-399).

After reviewing the trial transcript and the testimony of both the government and defense witnesses, the district court did not err when denying Mr. Garrett's

Rule 29 motion for judgment of acquittal at the end of the governments' case and again at the end of his case.

## II.     THE DISTRICT COURT DID NOT ERR WHEN IT SENTENCED APPELLANT JOSEPH A. GARRETT TO THE HIGHER END OF THE ADVISORY GUIDELINE RANGE AS ANY SENTENCE IMPOSED WITHIN A GUIDELINE RANGE IS PRESUMPTIVELY REASONABLE.

### A.     STANDARD OF REVIEW

A sentence imposed by a district court is reviewed "under a deferential abuse-of-discretion standard."  Gall v. United States, 552 U.S. 38, 41 (2007). "Under this standard, a sentence is reviewed for both procedural and substantive reasonableness."  Id., at 51; Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456 (2007).

### B.     DISCUSSION OF THE ISSUE

The law is clear that "any sentence that is within or below a properly calculated Guidelines range is presumptively reasonable."  United States v. Louthian, 756 F.3d 295, 306 (4th Cir. 2014) (citing United States v. Abu Ali, 528 F.3d 210, 261 (4th Cir. 2008)).  Mr. Garrett's advisory guideline range was 121 months to 151 months in prison.  He was sentenced by the district court to 147 months.  Such sentence is within the guideline range and is therefore presumptively reasonable.

Therefore, there are no legally nonfrivolous issues presented by the district court's actions.

## CONCLUSION

After careful review of the record and pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), counsel is of the opinion that he has briefed all arguable issues and that there is no legally nonfrivolous issue to raise in this appeal.  Counsel respectfully requests that the Court conduct an independent review of the record to determine whether any justifiable issues or prejudicial errors have been overlooked by counsel.

Respectfully submitted,

JOSEPH A. GARRETT, Appellant

By:     /s/ Scott C. Brown
        SCOTT C. BROWN (WV #7134)
        Scott C. Brown Law Office
        1600 National Road
        Wheeling, West Virginia 26003
        Telephone: (304) 242-6001
        Facsimile: (877) 230-2978
        scott@scottbrownlaw.com
        Of Counsel for Appellant

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*5,067*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>December 2, 2015</u>          <u>/s/ Scott C. Brown</u>
                                        *Counsel for Appellant*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 2nd day of December, 2015, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Shawn A. Morgan                         Tara N. Tighe
OFFICE OF THE U.S. ATTORNEY            OFFICE OF THE U.S. ATTORNEY
320 West Pike Street                     1125 Chapline Street
Clarksburg, West Virginia  26301        Post Office Box 591
(304) 623-7030                           Wheeling, West Virginia  26003
                                          (304) 905- 2248

*Counsel for Appellee*                   *Counsel for Appellee*

I further certify that on this 2nd day of December, 2015, I caused the required copies of the Brief of Appellant to be hand filed with the Clerk of the Court and a copy of the Brief of Appellant to be served, via U.S. Mail, postage prepaid, upon counsel the Appellant, at the address below:

Joseph A. Garrett #09813-087
FCI HAZELTON
FEDERAL CORRECTIONAL INSTITUTION
Post Office Box 5000
Bruceton Mills, West Virginia  26525

*Appellant*

/s/ Scott C. Brown
*Counsel for Appellant*